IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

FLORINA P.,[1]

          Plaintiff,

   v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

          Defendant.

No. 3:18-cv-00256-HZ

OPINION & ORDER

Lisa R. J. Porter
JP LAW PC
5200 S.W. Meadows Road, Suite 150
Lake Oswego, Oregon 97035

     Attorney for Plaintiff

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 - OPINION & ORDER

Billy J. Williams
UNITED STATES ATTORNEY
District of Oregon
Renata Gowie
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2936

Sarah L. Martin
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

    Attorneys for Defendant

HERNANDEZ, District Judge:

    Plaintiff Florina P. brings this action seeking judicial review of the Commissioner's final

decision to deny disability insurance benefits (DIB) and supplemental security income (SSI)

before July 26, 2016. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated

by 42 U.S.C. § 1383(c)(3)). I reverse the Commissioner's decision and remand the case for

additional proceedings.

## PROCEDURAL BACKGROUND

    Plaintiff applied for DIB and SSI on February 14, 2014, alleging an onset date of May 20,

2007. Tr. 81-86. Her applications were denied initially and on reconsideration. Tr. 69-80, 126-

30 (DIB Initial); Tr. 94-109, 137-39 (DIB Recon.); Tr. 68, 81-91, 131-34 (SSI Initial); Tr. 92,

110-25, 140-42 (SSI Recon.). On August 3, 2016, Plaintiff appeared, with counsel, for a hearing

before an Administrative Law Judge (ALJ). Tr. 43-67. On September 30, 2016, the ALJ found

Plaintiff not disabled before July 26, 2016, but disabled after that date. Tr. 17-42. The Appeals

Council denied review.  Tr. 1-6.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on a back injury and chronic back pain, fibromyalgia, chronic knee pain, anxiety, depression, and panic attacks.  Tr. 224.  At the time of the hearing, she was fifty years old.  Tr. 48 (stating date of birth).  She completed eighth grade and half of ninth grade in Mexico.  Tr. 49.  Plaintiff speaks, reads, and understands very little English.  Tr. 52.  She does not write in English.  Tr. 52-53.  The ALJ found that Plaintiff's "main language" is Spanish.  Tr. 35.  Because Plaintiff can read only very little English and cannot write in English, the ALJ found her to be illiterate.  Tr. 35.  Plaintiff has past relevant work experience as an agricultural produce sorter, hand packager, production helper, and harvest worker.  Tr. 62-63.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Disability claims are evaluated according to a five-step procedure.  *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability).  The claimant bears the ultimate burden of proving disability.  *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner

determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yucker*t, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. Tr. 23. Next, at steps two and three, the ALJ determined that Plaintiff has severe impairments of headaches, a spine disorder, and fibromyalgia, but that the impairments did not meet or equal, either singly or in combination, a listed impairment. Tr.

23-27.

At step four, the ALJ concluded that before July 26, 2016, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), with the following additional limitations: (1) she can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, but can never climb ladders, ropes, or scaffolds; (2) she is limited to hearing and understanding simple oral instructions and to communicating simple information orally; and (3) she can have no exposure to hazards such as moving mechanical parts, unprotected heights, or operating a motor vehicle, and she can be exposed to a loud level noise at most. Tr. 28. However, beginning on July 26, 2016 and thereafter, the ALJ concluded that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), along with the same additional limitations provided for in the pre-July 26, 2016 RFC. Tr. 33.

With the pre-July 26, 2016 RFC, the ALJ determined that Plaintiff is able to perform her past relevant work of agricultural produce sorter. Tr. 34-35. Thus, the ALJ determined that before that date, Plaintiff was not disabled. 36. With the RFC applicable on July 26, 2016 and thereafter, the ALJ found that Plaintiff is unable to perform any of her past relevant work. Tr. 35. Continuing at step five, the ALJ determined that under the RFC applicable on July 26, 2016 and thereafter, there were no jobs that exist in significant numbers that Plaintiff is able to perform and thus, she was disabled beginning on July 26, 2016 and continuing thereafter. Tr. 35-36.[2]

/ / /

---

[2] The consequences of the ALJ's determinations are that Plaintiff is considered disabled for purposes of her SSI claim, beginning July 26, 2016, but is not disabled at all for the purposes of her DIB claim because she failed to establish disability before December 31, 2012, her date last insured.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred in her determination of non-disability before July 26, 2016 by (1) finding her subjective limitations testimony not credible; (2) finding her anxiety and depression to be non-severe impairments at step two; (3) improperly rejecting lay opinion testimony; and (4) improperly rejecting the opinion of her treating physicians. She also argues that the ALJ erred by failing to "incorporate all medical findings" into the RFC and failed to assess whether Plaintiff was capable of working on a "regular and continuing basis." Pl.'s Brief 31, ECF 13. This last argument appears to challenge the ALJ's RFC and adds nothing to the

previous arguments raising specific errors. *Id.* at 31-32. Thus, I do not address it as a separate alleged error by the ALJ.

I. Plaintiff's Credibility

The ALJ is responsible for determining credibility. *See Vasquez*, 572 F.3d at 591. Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (ALJ engages in two-step analysis to determine credibility: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed

medications, and the unexplained absence of treatment for excessive pain. *Id.* As the Ninth

Circuit explained in *Molina*:

> In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation. For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.] While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.] Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

*Molina*, 674 F.3d at 1112-13 (citations and internal quotation marks omitted).

The ALJ summarized Plaintiff's subjective limitations testimony and noted that Plaintiff's

low back pain has caused pain in her knees which limits the amount of time she can stand to

thirty minutes to an hour and the amount of time she can sit in one position; that she has

numbness in her legs; that she has severe pain from her fibromyalgia which makes it painful for

her to work; that she forgets things because of her pain; that she has headaches every two to three

weeks which sometimes last all day and make her dizzy and unable to walk; that due to her sleep

apnea, she feels fatigued all day; that she does not handle stress or changes in routine well; that

her impairments affect her memory; and that her impairments affect her ability to lift, squat,

bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, and concentrate. Tr. 28-29.

The ALJ cited the appropriate two-part test in evaluating Plaintiff's testimony. Tr. 28.

The ALJ then gave three reasons in support of her negative credibility determination. First, she

concluded that Plaintiff's activities of daily living were inconsistent with her complaints of pain

and disabling symptoms. Tr. 29. Second, she noted that the record reflected work activity after the alleged onset date. *Id.*. Third, she determined that Plaintiff's allegations were not supported by the objective medical evidence. Tr. 29-31.

A. Activities of Daily Living

The ALJ cited the following activities as inconsistent with Plaintiff's allegations: (1) she prepares meals, does laundry, washes dishes, and cleans when her pain is not severe; (2) she watches her granddaughter and walks her to the bus; (3) she has a driver's license; (4) she shops for groceries; (5) she does hand stitching, watches television, and reads; (6) she can handle money because she can pay bills, count change, handle a savings account, and use a checkbook or money order; (7) she can follow spoken instructions; (8) she lives with her husband and twenty-year old son; (8) she spends time with her children and grandchildren and has no problem getting along with family, friends, neighbors, or others. Tr. 29.

Plaintiff argues that the ALJ did not provide clear and convincing reasons to discredit Plaintiff's testimony because the ALJ failed to consider the record as a whole which shows that her testimony is consistent with her activities. Defendant contends that the ALJ's finding is supported by the record.

The ALJ is required to articulate what testimony is not credible and why. *Treichler v. Comm'r*, 775 F.3d 1090, 1102-03 (9th Cir. 2014) (explaining that under 42 U.S.C. § 405(b)(1), an ALJ has the "responsibility to provide 'a discussion of the evidence' and 'the reason or reasons upon which' his adverse determination is based."). Here, the ALJ summarized Plaintiff's testimony in one paragraph and then summarized the alleged inconsistent testimony in the next paragraph. But, the ALJ did not *explain* the reason or reasons why Plaintiff's activities were

inconsistent with her testimony. In this case, where the Plaintiff alleges both physical and mental functioning limitations, and where the physical limitations are allegedly attributable to multiple physical impairments, it is incumbent upon the ALJ to more specifically refer to the particular testimony and the particular activity and explain how the specific activity undermines the specific testimony.

Even if the ALJ's discussion were sufficiently specific, I agree with Plaintiff that many, if not all, of the activities cited by the ALJ are not inconsistent with Plaintiff's testimony. For example, it is unclear how Plaintiff's possession of a driver's license contradicts her testimony that she has pain, has limitations in standing and sitting, has numbness in her legs, has headaches every two to three weeks which cause pain and make her dizzy and unable to walk, feels fatigued, has a hard time with stress or changes in routine, and has problems completing tasks and concentrating. Any possible contradiction is even more unclear given the undisputed testimony that while Plaintiff has a driver's license, she does not drive and her children drive her when she needs transportation. Tr. 48-49; *see also* Tr. 25 (she no longer drives because pushing on the pedals causes her back to hurt). Similarly, it is unclear how living with her husband and twenty-year old son is inconsistent with any of her alleged physical limitations or her allegation that she has a hard time completing tasks or concentrating.

The ALJ failed to completely describe the evidence regarding Plaintiff's preparation of meals, washing dishes, doing laundry, and grocery shopping. Plaintiff testified at the hearing that she cooks something for breakfast and cooks for her family "if I can." Tr. 55. Her cooking for breakfast is "something simple." Tr. 250; *see also id.* at 251 (sometimes, about three days per week, she prepares simple meals for herself and her granddaughter but not dinner). And when

she does cook for her family, she makes simple foods and she has to break up the time to be able to complete the meal preparation.  Tr. 58.

Plaintiff's family members help her with chores and preparing meals.  Tr. 250.  She tries to clean for a "little bit," meaning fifteen minutes, but her husband and son complete any cleaning after they get home at the end of the day.  Tr. 250.  She cannot sweep or mop because of her back pain.  Tr. 55.  She "sometimes" does dishes and does laundry a "few times."  Tr. 55. She can do some laundry if it is separated and is placed where she does not have to bend down to get it.  Tr. 252.  It also takes her awhile to load it because she has difficulty moving without pain. *Id.*  She does grocery shopping about twice per month and only when someone else takes her.  Tr. 252.  It takes her 1.5-2 hours because she cannot move quickly due to her pain.  *Id.*

The evidence in the record shows that Plaintiff's description of her ability to prepare meals, perform chores including laundry, and go grocery shopping is not inconsistent with her allegations of limitations due to her pain.  Her testimony, both in writing and at the hearing, establishes that she engages in these activities on a restricted basis, intermittently, with assistance, with interruptions, and that they take longer than they used to because of her pain. Thus, the ALJ's finding that Plaintiff's limitations testimony is not credible based on her performance of these activities is not supported by substantial evidence in the record.

As for the time she spends with her granddaughter, Plaintiff testified at the hearing that she takes care of her granddaughter every day, but, she explained, her granddaughter, age eight, "pretty much she takes care of me."  Tr. 56.  Plaintiff described that together with her fifteen-year old grandson, her grandchildren give Plaintiff her medications and remind her to take them.  Tr. 56.  When she is unable to get out of bed because of her pain, her grandchildren bring her

something to eat. *Id.* In her written statements made a couple of years before the hearing, Plaintiff explained that she watched her granddaughter for a couple of hours in the morning, but that her granddaughter would usually go to sleep with Plaintiff during that time or helped Plaintiff by bringing her things when Plaintiff is unable to get up. Tr. 250. She also stated that her granddaughter got herself ready for school and that Plaintiff walked her "outside to her bus." *Id.* There is no indication how far that distance is. And, Plaintiff explained that her granddaughter had missed a lot of school because sometimes Plaintiff has been unable to walk her outside. *Id.*

While it is possible that a claimant's responsibility for the care of young children can be inconsistent with allegations of disabling pain, the record does not support that conclusion here, at least absent a more thorough discussion and explanation by the ALJ. Plaintiff's uncontradicted testimony shows that she provides little or no hands-on care for her granddaughter, that her granddaughter sleeps with her and is independent in getting ready for school, and that Plaintiff sometimes cannot even get her granddaughter out to the bus (however close or far that may) because of her limitations. The ALJ's finding that Plaintiff's watching her granddaughter and walking her to the bus is inconsistent with her limitations testimony ignores the full description of these activities in the record and is not supported by substantial evidence.

There are other activities noted by the ALJ that presumably and allegedly contradict Plaintiff's allegations that she has a hard time with stress and changes in routine and that her impairments make her forgetful and affect her ability to complete tasks and concentrate. This is not entirely clear, however, because the ALJ failed to explain what activities undermined what allegations. Additionally, perhaps the ALJ intended Plaintiff's activities of hand stitching,

watching television, and reading, her ability to handle money, her ability to follow spoken instructions, and her spending time with children and grandchildren as contradicting Plaintiff's allegations of *physical* limitations, but because that is not clear and not, without further explanation, a reasonable contention, I do not interpret the ALJ's decision in that way. I consider all of these activities to have been cited by the ALJ as undermining Plaintiff's mental limitations testimony.

Plaintiff testified at the hearing that she listened to music. Tr. 55. She indicated that she reads, but "very little" because she forgets what she has been reading and cannot concentrate because of the pain. *Id.* In her written testimony, she stated that she reads "occasionally." Tr. 253 (further stating that she reads a couple of times per week). She explained that she used to do hand stitching a lot but now does it only "sometimes" which she stated was about once each month. *Id.* She watches television news almost daily. *Id.* She explained that she "lost" her social life because she cannot visit people given her inability to stay seated for a long period of time. Tr. 55. She would rather lie down at home because of her pain. *Id.*

When Plaintiff's written and oral testimony is fully considered, it is apparent that she performs the hand stitching and reading activities noted by the ALJ only sporadically and not regularly. It is not clear how watching the news daily undermines her allegations that she is forgetful, does not handle stress or changes in routine well, or has a hard time paying attention or concentrating. Similarly, the ALJ fails to explain why spending time with her children and grandchildren or others contradicts her allegations. Finally, as to her ability to handle money, her written testimony is that she can pay bills, count change, "handle" a savings account, and use a checkbook or money orders. Tr. 253. Plaintiff wrote that she no longer pays the bills personally.

*Id.* She fills out the checks or money orders and then gives them to her husband who pays the bills. *Id.* This testimony suggests that Plaintiff can concentrate sufficiently to manage her household finances, albeit with some help from her husband who it appears is responsible for delivering the payments or ensuring they are made, as opposed to making accounting calculations and decisions. However, without more, these bill-paying activities, which are presumably not performed continuously, do not contradict Plaintiff's subjective testimony.

The ALJ's summary of Plaintiff's subjective allegations, followed by a summary of her activities, is insufficiently specific. Additionally, the ALJ erred by failing to fully describe the limited nature in which Plaintiff performs most of the activities cited by the ALJ. As a result, the ALJ's finding that Plaintiff's subjective limitations testimony is not credible because it is inconsistent with Plaintiff's activities of daily living is not supported by substantial evidence in the record.

B. Post-Onset Work Activity

The ALJ next cited Plaintiff's work activity after the alleged onset date as a reason to reject her subjective limitations testimony. Tr. 29. While that activity did not amount to disqualifying "substantial gainful activity," the ALJ found that it indicated that Plaintiff's daily activities had been greater than she reported. *Id.*

Plaintiff's alleged onset date was in May 2007. The record shows that since that time, and through 2016, she had only one year with any earnings. Tr. 211. In 2011, she earned $1,496. *Id.* At the hearing, Plaintiff explained that for five or six months during that year, she worked "at home" babysitting two children, ages unknown, for thirty to sixty minutes, two to three days per week. Tr. 49. Thus, according to the ALJ, in nine years, a single period of a few months in

which Plaintiff worked at most three hours per week (assuming sixty minutes per time, and three days per week), rendered all of her subjective testimony not credible. I disagree with the ALJ.

A claimant's work activity during a period of alleged disability may support the ALJ's decision to discount a claimant's testimony. *E.g.*, *Bray v. Comm'r*, 554 F.3d 1219, 1227 (9th Cir. 2009). In *Bray*, the claimant had recently worked for two years as a personal caregiver and had sought other work since. *Id.* In contrast, in *Lingenfelter*, the Ninth Circuit rejected the ALJ's reliance on the claimant's attempted return to work as undermining the claimant's limitations testimony. *Lingenfelter*, 504 F.3d at 1036-37. There, the claimant worked for nine weeks after his alleged onset date and during difficult economic circumstances. *Id.* at 1036. Ultimately, however, his work attempt failed because of his impairments. *Id.* at 1037. As a result, the court held that the failed work attempt was not a clear and convincing reason for concluding that his symptoms could not have precluded him from maintaining employment during the relevant period of time. *Id.*

Here, Plaintiff's work activity was limited and not sustained for more than a few months. There is no evidence in the record regarding the ages of the children she watched or what she was expected to do. If, for example, after the children arrived at Plaintiff's home all they did was watch television for thirty to sixty minutes, the work activity would not undermine Plaintiff's limitations testimony. On the other hand, if the evidence were that Plaintiff engaged in more robust activities with very young children, the evidence might contradict her allegations regarding her disabling symptoms. But, such evidence is not in the record. The ALJ asked only when Plaintiff worked and for whom. Tr. 49-50. Without more, Plaintiff's limited babysitting for a period of a few months is not a clear and convincing reason to discredit her testimony.

/ / /

C. Objective Medical Evidence

The ALJ may consider objective medical evidence in determining a claimant's credibility regarding subjective symptom testimony, as long as the ALJ does not reject such testimony solely because it is unsubstantiated by the objective medical evidence. 20 C.F.R. §§ 404.1529(c), 416.929(c); *Rollins v. Massanari*, 261 F.3d 853, 856, 857 (9th Cir. 2001) ("Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain[;] . . . While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (internal quotation marks and brackets omitted).

Because the ALJ's other two reasons for rejecting Plaintiff's subjective testimony are not clear and convincing reasons supported by substantial evidence in the record, the only remaining reason given in support of the credibility finding is the alleged inconsistency with the objective medical evidence. However, because the ALJ may not rely on that reason alone, even if the ALJ correctly determined that the objective evidence does not support Plaintiff's testimony, it cannot save the ALJ's credibility determination from error. Accordingly, in the interest of judicial efficiency, I decline to separately address this part of the ALJ's decision.

The ALJ erred in rejecting Plaintiff's subjective limitations testimony.

II. Step Two

Plaintiff argues that the ALJ erred in failing to find her major depressive disorder and

panic disorder severe impairments at step two or accounting for them in the RFC. The ALJ found that Plaintiff's "medically determinable impairments of [] anxiety and depression do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore non-severe." Tr. 24. In support of this finding, the ALJ considered the four "paragraph B criteria": (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; (4) and episodes of decompensation. Tr. 25-26. The ALJ found that Plaintiff had mild limitation in the first three criteria and that she had no episodes of decompensation which had been of extended duration. *Id.* The ALJ stated that she had considered all symptoms and the extent to which the symptoms were consistent with objective medical evidence and other evidence. Tr. 26. She further considered the opinions of state agency psychological consultants who, also relying on the four "paragraph B" criteria, found Plaintiff's mental impairments to be non-severe. *Id.* Finally, the ALJ explained that a June 4, 2013 assessment of Plaintiff's Global Assessment of Functioning Score of 50 was of limited evidentiary value. Tr. 26-27 (citing Tr. 746).

Plaintiff argues that in finding her mental impairments to cause only mild restrictions in her activities in daily living, the ALJ relied on Plaintiff's ability to do laundry, wash dishes, etc... Plaintiff argues that this discussion by the ALJ does not analyze the effect of depression or panic and fails to recognize that mental health symptoms wax and wane. As a result, she contends that the occasional performance of these activities does not suggest that they are not more seriously impacted by her mental health issues. She notes one intentional suicide attempt and several references to her anxiety by her providers. Pl.'s Brief 27-28.

Next, Plaintiff states that in regard to her social functioning, the ALJ cited only one

treatment note which indicated her mood, affect, and behavior were normal and two citations where she had appropriate thought content and judgment. Tr. 25 (citing Tr. 449 (Jan. 18, 2013 chart note stating that she had a normal mood and affect and that her behavior was normal)). In contrast, Plaintiff cites to numerous references in the record where providers referred to her anxiety. Pl.'s Brief 28 (citing, *e.g.*, Tr. 392 (Aug. 26, 2013 chart note stating Plaintiff is having worsening depression and anxiety affecting her sleeping); Tr. 442 (May 8, 2013 chart note referring to Plaintiff's history of chronic anxiety and noting her dysphoric mood); Tr. 554 (Feb. 21, 2011 note of anxious affect); Tr. 763 (Mar. 21, 2014 chart note indicating that Plaintiff's pain contributed to her anxiety and depression and assessing her with anxiety)).

Plaintiff also notes evidence in the record showing that she self-isolates and stays in her room crying and feels as if her family would be better off without her. Pl.'s Brief 25 (citing, *e.g.*, Tr. 262 (2014 statement from daughter stating that sometimes Plaintiff does not leave her room because of her depression and crying); Tr. 322 (undated statement from son stating that there are some days Plaintiff spends all day crying in her room because she has missed a family event due to her impairments); Tr. 731 (June 14, 2013 report by Plaintiff that she feels like a burden to her family and has wanted to be isolated, believing her family would be happier if she were "not around"); Tr. 743 (June 14, 2013 diagnoses of major depressive disorder and panic disorder without agoraphobia); Tr. 750 (Nov. 2013 chart note indicating Plaintiff reported increased anxiety and increased symptoms of depression including crying all the time and feeling like a burden to her family)).

In regard to the impact on her ability to concentrate, Plaintiff cites to evidence in the record showing that she has ruminating thoughts and forgetfulness due to her anxiety. Tr. 1276

(Oct. 3, 3015 chart note describing Plaintiff's anxiety and depression, including that she cannot sleep and instead "thinks and thinks," and noting her report that she forgets things ); *see also* Tr. 1270 (primary care physician opinion dated July 26, 2016 opining that Plaintiff's anxiety and depression produce symptoms which frequently or very frequently interfere with her attention and concentration).

Based on all of this evidence in the record, Plaintiff argues that the ALJ erred in concluding that her anxiety and depression were not severe impairments because it is clear that they significantly limit Plaintiff's ability to do basic work activities.

Defendant argues that the ALJ did not err at step two. Relying on its arguments defending the ALJ's credibility determination, Defendant contends that Plaintiff's activities were "extensive" and thus, supported the ALJ's determination that she had only mild limitations in this functional area. Similarly, Defendant contends that the reasons given in support of the negative credibility determination also support a mild limitation in social functioning because Plaintiff lived with and interacted with her husband and son, spent time with children and grandchildren, and got along with family, friends, neighbors, and others. Defendant also relies on Plaintiff's ability to follow spoken instructions well, handle money, and evidence in the record showing that she was oriented to person, place, and time, was attentive, had fair insight and judgment, had normal thought content and judgment, and had normal registration, recall, concentration, attention, and language. Defendant further maintains that Plaintiff had no episodes of decompensation of extended duration because her single alleged suicide attempt and repeated appearances at the emergency department due to alleged panic attacks did not meet either the durational or frequency requirements. Finally, Defendant argues that even if the ALJ erred in

failing to find her anxiety and depression severe at step two, the ALJ's error is harmless because the ALJ included limitations in her RFC which addressed these impairments.

Other than the finding regarding episodes of decompensation, the ALJ's step-two determination is not supported by substantial evidence in the record. A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" are the "abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, and lifting, and mental functions such as understanding, carrying out, and remembering simple instructions. 20 C.F.R. §§ 404.1522(b), 416.922(b). In Social Security Ruling (SSR) 85-28 (available at 1985 WL 56856, at *3), the Commissioner explained that an impairment "is not severe" if it has "no more than a minimal effect on [an individual's] physical or mental ability(ies) to do basic work activities[;]" *see also* SSR 96-3p (available at 1996 WL 374181, at *1) ("an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.").

The Ninth Circuit has explained that the step-two severity determination is expressed "in terms of what is 'not severe.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Importantly, as the Ninth Circuit noted, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* (citing *Yuckert*, 482 U.S. at 153-54). "[T]he severity regulation is to do no more than allow the [Social Security Administration] to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working." SSR 85-28, 1985 WL 56856, at *2 (internal quotation marks omitted). Therefore, "an ALJ may find that a claimant lacks a medically severe impairment or combination

of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting SSR 85-28).  The court's task in reviewing a denial of benefits at step two is to "determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Id.*

Here, the medical record shows that while there were occasional reports of normal mood or intact judgment, there were also many reports of symptoms of anxiety and depression which impacted Plaintiff's ability to sustain various activities of daily living, caused her to withdraw at times, caused her to feel hopeless and to cry frequently, and affected her ability to concentrate. For the reasons previously explained, Plaintiff's activities of daily living were not, as Defendant characterizes them, "extensive," but were limited as described above.  Additionally, the ALJ is required to consider the claimant's subjective symptoms in determining severity.  *Smolen*, 80 F.3d at 1290.  Here, the ALJ did not fairly consider Plaintiff's subjective testimony and given that the ALJ's rejection of that testimony was error, Defendant cannot rely on the ALJ's limited recitation of those activities in support of the step-two determination.  Plaintiff's own treating physicians opined that her mental impairments affected her abilities to pay attention and to concentrate.  Overall, the ALJ's findings that Plaintiff's anxiety and depression were not severe because Plaintiff has only mild impairments in her activities of daily living, social functioning, and concentration, persistence, and pace, is not supported by substantial evidence.

Furthermore, the error is not harmless.  Although Defendant contends that the ALJ included "several mental limitations in the RFC," Def.'s Brief 15, ECF 15, Defendant does not identify them.  The RFC primarily addresses Plaintiff's physical limitations.  It does include a

limitation to "hearing and understanding simple oral instructions and to communicating simple information orally." Tr. 28. These are the only non-physical limitations in the RFC. The question is whether they address Plaintiff's mental limitations. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (where the ALJ considered evidence of limitations posed by claimant's bursitis at step four of the disability analysis, any error in failing to consider bursitis "severe" at step two was harmless).

These limitations appear to address Plaintiff's language barrier and illiteracy, not her anxiety and depression symptoms. For example, they do not address pace or production methods which would show consideration of a limitation in concentration. They do not include limitations for a low-stress job environment. Instead, they address communication. Accordingly, they do not render the ALJ's step-two error harmless.

III. Lay Witness Testimony

Plaintiff's daughters and son provided written statements regarding Plaintiff's impairments. Tr. 258-65, 321 (June 2014 Third Party Function Report and separate statement completed by daughter Yvette Martinez); Tr. 320 (statement from daughter Araceli Guillen); Tr. 322 (statement from son Simon Jacuinde). The ALJ noted that all of the statements were "generally supportive of [Plaintiff's] allegations." Tr. 32. They indicated that Plaintiff suffered from "constant pain, depression, and anxiety, which made her unable to work[,]" and that her pain affected Plaintiff's ability to sit, stand, and walk. *Id.* The ALJ gave only "partial weight" to these statements because (1) they overestimated Plaintiff's limitations "in a manner not consistent with the record"; (2) "these individuals are not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or

intensity of unusual moods or mannerisms, [and thus] the accuracy of the information provided is questionable"; (3) "by virtue of their relationships with" Plaintiff, they are not "disinterested third party witnesses whose statements would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges"; and (4) "[m]ost importantly, significant weight cannot be given to the third party reports because they, like the claimant's allegations, are simply not consistent with the preponderance of the observations by medical doctors in this case." *Id.*[3]

"Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina*, 674 F.3d at 1114. The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine*, 574 F.3d at 694.

Plaintiff argues that the reasons given by the ALJ are not germane to these witnesses' testimony. She contends that rejecting testimony because of the witness's familial relationship is not a germane reason. Cases support Plaintiff's position and Defendant does not argue otherwise. *Regennitter v. Comm'r*, 166 F.3d 1294, 1298 (9th Cir. 1999) ("alleged bias as [claimant's] mother . . . cannot be a ground for rejecting . . . testimony") (internal quotation marks omitted); *Smolen*, 80 F.3d at 1288 (dismissal of "family witnesses who were therefore understandably advocates, and biased . . . amounted to a wholesale dismissal of the testimony of all the witnesses as a group

---

[3] Later in her decision, the ALJ gives "great weight" to the statements from Plaintiff's children. Tr. 33. She described the opinions by these lay witnesses, as she did previously, as "generally supportive" of Plaintiff's allegations. *Id.* (also stating that they indicated she suffered from constant pain, depression, and anxiety which made her unable to work and that her pain affected her ability to sit, stand, and walk). The ALJ gave "[g]reat weight to the portion of the opinion, which indicates that the claimant has constant pain because it is consistent with the record as of July 26, 2016." *Id.*

and therefore does not quality as a reason germane to each individual who testified . . . To the contrary, testimony from lay witnesses who see the claimant every day is of particular value; such lay witnesses will often be family members").

Plaintiff also argues that it is axiomatic that testimony by family member lay witnesses is not that of a medical professional and that the lack of medical training is not a germane reason to reject the testimony. I agree with Plaintiff and again, Defendant does not contend to the contrary. Non-medical professional lay witness testimony is relevant to show the severity of a claimant's impairments and how it affects the claimant's ability to work. *E.g.*, *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) (stating that disregarding lay witness testimony from family and friends violates the Secretary's regulation that the Secretary will consider observations by non-medical sources as to how an impairment affects an individual's ability to work). The ALJ erred by relying on this reason to reject the lay witness testimony.

The ALJ also cited the lack of consistency with "the record." Tr. 32. But, without more, this is an insufficiently specific reference that fails to provide a germane reason. Finally, the ALJ rejected the lay witness testimony because, "like [Plaintiff's] allegations," the lay witness statements were not consistent with the preponderance of observations by medical doctors. Tr. 32. While the ALJ may rely on the same reasons for rejecting testimony from the claimant and lay witnesses when the allegations are similar, *Valentine*, 574 F.3d at 694, here, for the reasons described above, the ALJ's reasons for rejecting Plaintiff's subjective testimony are not supported by substantial evidence and thus, do not provide a basis for rejecting the similar testimony by the

lay witnesses.[4]

IV.  Treating Physician Opinion

Beginning in February 2014, Plaintiff's primary care providers, Vanessa Esteves, N.D., and Daniel Stroud, M.D., at Portland Integrated Health, saw her typically every few months for a variety of conditions, including pain, anxiety, and depression.  *See generally* Tr. 756-64, 848-63, 1221-61; *e.g.*, Tr. 763 (increased anxiety with pain); Tr. 862 (knee pain); Tr. 761 (back pain); Tr. 1252 (back pain, neck pain, depression); Tr. 1245 (stress).  Her chronic diagnoses included lumbar facet joint pain, generalized anxiety disorder, osteoarthritis of the knee, depressive disorder, pain in joint in lower leg, osteoarthritis generally, sacrum sprain, joint pain, and more. Tr. 852, 1224.  The physicians' records show that many of Plaintiff's impairments existed at the inception of the treating relationship.  *E.g.*, Tr. 758, 763 (showing lumbar facet joint pain, anxiety disorder, sacrum pain as of March 13, 2014 which coincides with date chart note completed for February 20, 2014 initial visit).

On July 26, 2016, her physicians completed a functional assessment of Plaintiff.  Tr. 1268-73.  There, these practitioners stated that they had been Plaintiff's primary care physicians since February 20, 2014 and saw her every few months plus check-ups, that her primary diagnoses were back pain, anxiety, hip pain, and osteoarthritis, and that she had chronic conditions of back pain and anxiety.  Tr. 1269.  They offered a variety of opinions regarding Plaintiff's functional limitations, including that she would experience substantial difficulty with

---

[4] Furthermore, *Smolen* holds that it is error for an ALJ to reject lay witness testimony because it is inconsistent with the claimant's medical records given that lay witness testimony is adduced in situations where subjective limitations are not supported by the objective medical evidence.  *Smolen*, 80 F.3d at 1289.

stamina, pain, and fatigue if she worked full-time at the sedentary or light exertional level. Tr. 1268-73.

The ALJ gave little weight to these opinions in the portion of her opinion addressing the pre-July 26, 2016 time period. Tr. 31-32. She noted that these physicians had not treated Plaintiff for the entire adjudicative period. Tr. 32. She also noted that the physicians stated they had treated Plaintiff only since February 20, 2014 and that the opinions did not specify when the functional limitations began. *Id.* However, in the section of the ALJ's decision addressing the post-July 26, 2016 time period, the ALJ again summarized the physicians' functional limitation opinion and then gave it partial weight. Tr. 33. The ALJ found "some of the limitations" to be overstated in light of the record, such as the opinion that she would be absent three days per month. *Id.* But, she gave great weight to the "opinion to the extent that it indicates the claimant would be limited to sedentary work at this point." *Id.*

Plaintiff argues that the ALJ erred in rejecting the opinion of her treating physicians for the period of time before July 26, 2016. She contends that her treating physicians have a long-standing relationship with Plaintiff and are well-qualified to render an opinion about her conditions. She further argues that their opinions correlate with her medical record, including findings by previous practitioners. Pl.'s Brief 31 (citing Tr. 1071 (May 2008 chart note by chiropractor noting Plaintiff's low back pain and remarking that Plaintiff cannot do regular work duties); Tr. 353 (June 2008 physician report of chronic low back pain treated with epidural steroid injection precluding her from working for a period of time)).[5] Defendant responds that

---

[5] While these practitioners opined on Plaintiff's ability to work, there is no indication in the record that she was actually working at the time they offered their opinions.

the ALJ properly gave the opinion little weight for the time period before July 26, 2016 because these physicians did not treat Plaintiff until 2014, which was after her date last insured (DLI), and they did not indicate the time period to which their opinions related.

The ALJ must give either "clear and convincing" or "specific and legitimate" reasons to reject a treating physician's opinion, depending on whether the opinion is contradicted by another doctor's opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). Even applying the "specific and legitimate" standard here, the ALJ erred.

Fundamentally, the ALJ offered no rational basis for her determination that Plaintiff became disabled on July 26, 2016. Nothing in the record shows that Plaintiff suffered any notable change in her conditions on that date. She was in no accident, took no new medications, had no new testing performed, reported no increase in symptoms, nor received a new diagnosis. The only basis offered is that her treating physicians happened to complete the functional limitations form on that date. This is a completely arbitrary date, however. It could well have been that they offered that same opinion one or six months earlier, or a month later. The record is devoid of anything occurring on that date to render Plaintiff disabled as of that time.

Defendant notes that the ALJ is the "final arbiter" with respect to resolving ambiguities in the record and contends that here, the ALJ properly inferred that the physicians' lack of indication about whether their opinions related to the period before July 26, 2016 suggested that those opinions applied only beginning on that date. I disagree. While it is not clear how far back their opinions related to, it was unreasonable for the ALJ to conclude that Plaintiff's disability began on July 26, 2016.

First, as the ALJ herself acknowledged, these practitioners had been treating Plaintiff for

more than two years before they completed the July 26, 2016 functional assessment. At a minimum, based on the length of the treating relationship, it is unreasonable to assume that their opinions failed to include some or all of the time Plaintiff had been their patient up until that point. Second, as is clear from the July 26, 2016 functional assessment itself, the physicians based their opinions on *chronic* pain and anxiety. Tr. 1269. This information supports the reasonable inference that Plaintiff's conditions, and thus, limitations, were *ongoing* and existed *before* July 26, 2016. Third, in response to a question asking whether the patient's "impairments [have] lasted or can they be expected to last at least 12 mos[,]" the physicians answered "Yes." *Id.* The question asks both whether the impairments had already lasted at least twelve months or whether they are expected to last twelve months. Given the previous 2.5 years of a treating relationship and the chronic nature of Plaintiff's impairments, it was unreasonable to interpret the answer to this question as supporting disability only from the date the form was completed rather than at least twelve months in the past.

The ALJ failed to give a specific and legitimate reason in support of her rejection of the treating physicians' opinions as to her limitations before July 26, 2016. Defendant is correct that if the treating physicians' opinions relate back to February 2014 when they started caring for Plaintiff, that date still does not address any limitations before Plaintiff's DLI, meaning it will not affect her DIB claim. But, how far back their opinions apply remains to be determined. These opinions may in fact relate further back than that date, and even if they do not, any post-DLI date is still relevant to her SSI claim. Thus, the ALJ erred in rejecting the treating physicians' opinion and the error is not harmless.

V. Remand

In social security cases, remands may be for additional proceedings or for an award of benefits. *E.g., Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (explaining that if "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded[,]" but "in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits") (internal quotation marks omitted).

To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *see also Treichler*, 775 F.3d at 1100 ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.; see also Treichler*, 775 F.3d at 1101 (when all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency).

Remand for additional proceedings is the appropriate course in this case. Although the ALJ failed to give legally sufficient reasons for rejecting Plaintiff's testimony and the opinion of her treating physicians, the record is not fully developed. Primarily, there remains the question of the time period covered by the treating physicians' opinion. Additionally, although the ALJ erred at step two by failing to find Plaintiff's mental health impairments severe, the ALJ should be given the opportunity to assess the limitations caused by these impairments in the first

instance.  Because further administrative proceedings would allow the ALJ to address these

issues, remand for such proceedings is required.

/ / /

CONCLUSION

The portion of the Commissioner's decision finding Plaintiff not disabled before July 26,

2016 is reversed and this case is remanded for additional proceedings.

IT IS SO ORDERED.

Dated this _____ day of _____, 2019

_____
Marco A. Hernandez
United States District Judge